IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA )
                         )
        v.               )        CASE NO: 1:08-cr-175-TFM
                         )        [wo]
SUN C. MCMURPHY          )

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Sun C. McMurphy's *Motion to Dismiss* (Doc. 30, filed 9/23/2009) and the *Government's Response to Defense Motion [to] Dismiss* (Doc. 40, filed 9/25/2009).  The Court orally denied the Motion in the pretrial hearing and also denied the oral renewed Motion to Dismiss  This opinion memorializes the Court's denial of both motions along with the reasons.

On March 23, 2008, Defendant Sun C. McMurphy ("Defendant" or "McMurphy") entered the Army and Air Force Exchange Service Post Exchange ("AAFES" or "PX") at Ft. Rucker, Alabama.  Ms. Linda Scott ("Scott"), a store detective in loss prevention was on duty in the PX as was Ms. Karmin Suarez ("Suarez").  Scott testified that she and Suarez began to watch McMurphy through the security cameras.  During her surveillance,  Scott saw McMurphy take a $24.00 set of three Monet rings and a set of earrings from the shelf. McMurphy took the rings out of the packaging and put them on her finger.  McMurphy put the empty packaging on a shelf and browsed the store briefly thereafter.  On her way out, McMurphy paid for the earrings, but not the rings.  In the meantime, Suarez went to the area where McMurphy put the empty packaging and found it on the shelf.  Scott testified she saw

Suarez through the video hold up the empty packaging and then Suarez returned to the security area with the empty package.  After McMurphy left the store, Scott intercepted her and brought her back into an office in the PX to await the arrival of the Military Police ("MP").  The MPs took the stolen rings from McMurphy and took her to the MP station. Scott further testified that the video of McMurphy's actions from when they started observing her was kept, but all other videos were not kept as they were not deemed relevant. Testimony also established that after the MPs finished gathering the evidence they thought necessary to prosecute the shoplifting, the PX sent McMurphy a letter.  The letter told McMurphy she could pay a civil recovery fee plus the cost of the rings ($224.00) and AAFES would give her the rings.  Therefore, after paying the $224 fee, McMurphy could have picked up the rings.  Scott testified that as late as February 2009, AAFES still had the rings at issue.

At trial, McMurphy and her husband testified that the rings taken from her by the MP were rings she bought on an earlier trip to another PX.  The form the MP use to document the incident lists the rings which they took from McMurphy as "used."  Scott signed the form listing the rings as used.  At trial Scott testified that she saw the rings when McMurphy handed them to the MP and the rings were not used, that is they were not two to three years old as McMurphy testified.  Scott testified that the description of  the rings as used, in her opinion, was to denote the rings were not in their original packaging and had been put to use during the theft by McMurphy as opposed to the overall condition of the rings.

Scott testified the security system began to record McMurphy when Scott began to

watch McMurphy through the security system.  The United States introduced and played the tape at trial.  *See* Government Trial Exhibit 1, "Surveillance Video."  Scott also testified the security system recorded Suarez when she came to the shelf and held up the discarded packaging material.  According to Scott, the videotape of Suarez holding up the merchandise was discarded as unnecessary.  In addition, the security system continuously records patrons when the PX is open therefore their would have been footage of McMurphy prior to Scott beginning her surveillance of McMurphy, but that such recordings are not regularly kept unless specifically determined as relevant.  Consequently, Scott testified that any footage of McMurphy prior to the shoplifting incident no longer exists.

McMurphy seeks to dismiss the information to  sanction the United States because it did not preserve the rings for inspection or trial.  The United States gave McMurphy a photograph of the rings she stole from the PX.  The rings were also confiscated, but later returned to AAFES and disposed of.  As the government chose not to retain the stolen items, this case is controlled by a line of Supreme Court cases addressing claims concerning the government's failure to preserve evidence, including *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); and *Illinois v. Fisher,* 540 U.S. 544, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004).  "The Supreme Court's jurisprudence divides cases involving nondisclosure of evidence into two distinct universes. *Brady* and its progeny address exculpatory evidence that is still in the government's possession. *Youngblood* and *Trombetta* govern cases in which the government no longer possesses the disputed evidence." *United States v. Dumas*, 207 F.3d

11, 15 (1st<sup>t</sup> Cir. 2000) (quoting *United States v. Femia,* 9 F.3d 990, 993 (1st Cir.1993)).

In *Olszewski v. Spencer*, 466 F.3d 47 (1st Cir. 2006), the First Circuit helpfully summarized the *Trombetta-Youngblood-Fisher* line of cases and this Court has already applied this analysis in an AAFES shoplifting case.  *See United States v. Hinton*, 2007 WL 2680038 (M.D. Ala. 2007) (Walker, J.) (providing detailed analysis on *Trombetta-Youngblood-Fisher* line of cases).  This Court relies heavily on that opinion.  Further, "[a] variety of other circuits have considered the relationship between *Trombetta* and *Youngblood* and have concluded that (1) the destruction of "apparently exculpatory" evidence does not require a showing of bad faith but that (2) if the evidence is only "potentially useful," a bad-faith showing is required." *Id.* at 56-57 and n. 7 (citing *United States v. Moore,* 452 F.3d 382, 388 (5th Cir. 2006); *United States v. Estrada*, 453 F.3d 1208, 1212-13 (9th Cir. 2006); *Bullock v. Carver*, 297 F.3d 1036, 1056 (10th Cir. 2002); and *United States v. Wright,* 260 F.3d 568, 571 (6th Cir. 2001)).  Eleventh Circuit case law is consistent with these cases. *See U.S. v. Roberson*, 195 Fed.Appx. 902, 903-04 (11th Cir. 2006) (unpublished) (Defendant must show that the government acted in bad faith in losing potentially useful evidence in order to show a due process violation.); *James v. Singletary*, 957 F.2d 1562, 1568 n. 4 (11th Cir. 1992) (Destruction of potentially exculpatory evidence violates Constitution only if the police acted in bad faith.); *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989) (Due process is only violated when a defendant can show bad faith on the part of the police who

failed to preserve potentially useful evidence.).[1]

Defendants allege the rings were exculpatory inasmuch as the photograph and the videotapes do not adequately show enough detail for the jury to discern that the rings had indicia of normal wear and tear which would confirm her defense that she owned the rings quite some time before Scott accused her of theft.  The Court finds that the rings are clear enough in the photographs introduced at trial for the jury to determine whether or not the rings were not used in the sense that they were previously owned by McMurphy.  Besides the photographs, the videotape and the testimony from Ms. Scott also indicate McMurphy did not already own the rings.  Furthermore, the very brief jury deliberations and accompanying guilty verdict, without any questions to the Court regarding the condition of the rings, provide enough proof that the jury found the rings were not previously owned by McMurphy as she and her husband testified.

Whether the verdict would be different or the actual rings would be exculpatory is murky, speculation at best.  Caselaw sums up the rules.  The Supreme Court declined to commit to courts "the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed," or to impose on the police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary

---

[1] Defendant has the burden of proving the constitutional violation.  *See U.S. v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006) ("'In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense.... 'To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'") (citation omitted).

significance in a particular prosecution." *Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337.

Instead, the Court observed:

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

*Id.*

The Court finds the result particularly compelling inasmuch as McMurphy could, but chose not to redeem the merchandise or attempt to obtain a clearer photograph of the rings.[2] Thus, because the allegedly shoplifted items in this case are, at best, potentially exculpatory, defendant must show bad faith to prove a constitutional violation. In this case, nothing before the Court suggests that the items were returned to the store in order to hide exculpatory evidence. *See Trombetta*, 467 U.S. at 488, 104 S.Ct. at 2533 (Authorities did not destroy evidence "in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny. In failing to preserve breath samples for respondents, the officers here were acting 'in good faith and in accord with their normal

---

[2]   The Court also notes McMurphy had the opportunity to preserve the evidence if she so chose. AAFES gave her the option of paying the civil recovery fee and after paying it, she could have picked up the rings. Therefore, McMurphy cannot put the blame entirely on the government. The information against McMurphy was filed on September 10, 2008 and McMurphy's counsel was appointed in November 2008. Trial was initially set for January 12, 2009. As of that point, AAFES still had the rings and Defendant made no efforts to view or obtain them.

practice.' ... The record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence.") (internal citations omitted).   Indeed McMurphy acknowledges in her Motion to Dismiss that there is no information to suggest the United States acted in bad faith when it returned the rings to stock.  Thus, like the *Hinton* case, the Court finds that the government was operating in good faith and in accordance with its normal practice in disposing of the rings; therefore, there is no Due Process violation. *Hinton*, 2007 WL 2670038 at *4.

As for the video evidence, like the rings, the other videos are *at best*, potentially exculpatory, thus, defendant must show bad faith to prove a constitutional violation. Nothing presented by defendant establishes bad faith on the part of AAFES in not preserving the additional camera angles or the video of McMurphy walking into the store.  Thus, there is no Due Process violation under the *Trombetta-Youngblood-Fisher* line of cases

Accordingly, for the foregoing reasons, it is **ORDERED** that Defendant's *Motion to Dismiss* (Doc. 30) is **DENIED**.

DONE this 19th day of November, 2009.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE